Filed 3/14/13  In re N.S. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.S. et al., Persons Coming Under the Juvenile Court Law. | |
| SANTA CRUZ COUNTY HUMAN SERVICES DEPARTMENT,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>B.S.,<br><br>        Defendant and Appellant. | H038534<br>(Santa Cruz County<br> Super. Ct. Nos. DP001738, DP001739, DP001740) |

        B.S., mother of N.S., L.F., and T.F. (the children), appeals from the juvenile court's orders terminating her parental rights as to the children pursuant to Welfare and Institutions Code section 366.26.[1]  (§ 395.)  She asserts that the notice requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) were not satisfied.

        We find no error and affirm those orders.

_____

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.  On our own motion, we take judicial notice of the record filed in *B.S. v. Superior Court*, H037949.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

*I*

*Procedural History*

The facts underlying dependency jurisdiction, the dependency proceedings, and the termination of parental rights are generally immaterial to this appeal.

On July 13, 2007, juvenile dependency petitions were filed on behalf of N.S., L.F., and T.F. pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support).

At the hearing on August 8, 2007, the juvenile court found, "[b]ased on mother's indication that she has Indian heritage," that "ICWA may apply." The court ordered mother and the maternal grandparents, who were present, to "provide the social worker with additional information." The court found N.F., who was present at the hearing, to be the presumed father L.F. and T.F. N.F. indicated that he had no Indian heritage. N.S. had a different father. As to N.S., the court indicated that the Indian heritage of her father was unknown and the court would revisit the issue of ICWA applicability "upon contact with father . . . ."

The Jurisdiction/Disposition Report, filed August 16, 2007, indicated that ICWA may apply since mother had stated during a telephone call on July 30, 2007 that the children have Cherokee heritage. The paternal grandmother of L.F. and T.F. believed the children may have Cherokee heritage through the maternal grandmother's side of the family. It reported that N.F., the father of L.F. and T.F., had disclaimed any Indian heritage. The report represented that the "Agency will provide the family with relevant paperwork to further assess any possible Native American heritage of the minors for ICWA purposes."

At the hearing on August 16, 2007, mother, the maternal grandparents, and the paternal grandmother and the paternal step-grandfather of L.F. and T.F. were present. This time, based on mother's indication that she had Indian heritage on her father's side,

2

the juvenile court found that ICWA may apply. It ordered proper notice be given to the Bureau of Indian Affairs (BIA).

On September 6, 2007, the juvenile court found that all the allegations in the dependency petition on behalf of N.S. were true, sustained the petition, declared N.S. to be a dependent child of the court, and ordered N.S. returned home with family maintenance services. A six-month family maintenance review hearing was calendared for February 21, 2008. As to L.F. and T.F., father's counsel advised the court that their father was in custody in Sacramento and was not transported for the hearing. The court granted counsel's request to continue the matters.

On September 13, 2007, the juvenile court sustained the petitions filed on behalf of L.F. and T.F after finding the petitions' allegations to be true. The court declared each of them to be a dependent child of the court and ordered them returned home with family maintenance services. A six-month family maintenance review hearing was calendared for February 21, 2008.

The Agency's report for the six-month review of family maintenance, filed February 21, 2008, stated: "The Indian Child Welfare Act may apply. Please see a memo submitted by Senior Social Worker Laura McClain. On 12/12/2007 [N.F., father of L.F. and T.F] reported that he does not have Indian Heritage."

An "ICWA Attachment to Social Worker's Report," also filed February 21, 2008 in each child's case, stated: "The minor's mother [B.S.] initially indicated that she may have Native American ancestry on the paternal side of her family. This Court asked the maternal grandfather during a hearing about his family's heritage and the maternal grandfather stated that he may have some distant tribal connection but that he wasn't sure, he is not entitled to any rights affiliated with any tribe, he has gained no benefits from any tribal connection, and that the 'little extinct tribe was perhaps six to seven generations back.' " The ICWA report indicated that the Agency had sent ICWA notice to two parents and the BIA. The report stated that the BIA's response indicated that, with regard

3

to each child, "the family ha[d] provided insufficient information substantiating any federally recognized tribe."

The ICWA notice for the six-month review hearing, which was attached to the social worker's ICWA reports, reflected that mother's tribe, band, and location was of "unknown origin." The notice indicated that the maternal grandfather's tribe was of "U[n]known Origin, 6-7 Generations Back." As to the maternal grandmother's and the paternal grandmother's Indian heritage, the notice indicated: "None Reported." The notice contained no information regarding the paternal grandfather or the great-grandparents. The certificate of mailing stated that the notice had been mailed on September 12, 2007 to the Sacramento Area Director of the BIA, B.S. (mother), and N.F. (father of L.F. and T.F.).

The letter from the BIA, dated September 21, 2007, was attached to the social worker's ICWA reports as well. It acknowledged receipt of the ICWA notice but stated: "The Family has provided insufficient information substantiating any federally recognized tribe. The *family* must provide a history back to the year 1900 with names, birth dates and/or birthplaces of ancestors to help in establishing a biological link with the original ancestral tribal member(s)." It further stated: "We depend on the *family's* information and the investigation conducted by the Dept. of Social Services to help us identify tribal heritage so that the appropriate tribe and/or rancheria can be notified. This form is not to be considered a determination that the child(ren) is or is not an Indian child under the ICWA. Notice to the Bureau of Indian Affairs is not a substitute for serving notice on the identified federally recognized tribe and the parent or Indian custodian. Compliance with 25 U.S.C. 1912 is still required."

At the sixth-month review hearing in the children's dependency cases on February 21, 2008, the juvenile court found that "proper ICWA notice has been given pursuant to [now former California Rules of Court, rule ] 5.664(f)." It further found that N.S., L.F. and T.F were not Indian children and ICWA did not apply to the dependency

4

proceedings. The minute order for that hearing shows that mother and her counsel were present at this hearing. It does not reflect that either mother or her counsel interposed any objection to the correctness of the ICWA notice or asserted that mother had Cherokee ancestry.

On August 2, 2008, supplemental petitions for a more restrictive placement were filed pursuant to section 387. On October 23, 2008, the court found the petitions' allegations were true and sustained the petitions.

On October 31, 2008, the juvenile court made its dispositional orders removing the children from parental custody and committed them to the Department's care, custody and control for placement with the maternal grandparents and the paternal grandmother and the paternal step-grandfather of L.F. and T.F. The court appointed those grandparents as the children's joint guardians and ordered that letters of guardianship be issued. It terminated dependency jurisdiction but retained jurisdiction of the guardianship under sections 366.3[2] and 366.4. Letters of guardianship were issued.

On April 14, 2011, petitions were filed requesting that the court terminate the existing joint guardianship and appoint the paternal grandmother and paternal step-grandfather of L.F. and T.F. as the sole legal guardians of the children pending a section 366.26 hearing. The petitions indicated that this paternal set of grandparents was willing to adopt the children.

On July 11, 2011, the juvenile court reinstated the dependencies[3] and ordered the issuance of letters of guardianship appointing the paternal grandmother and paternal step-

---

[2]     "Following establishment of a legal guardianship, the court may continue jurisdiction over the child as a dependent child of the juvenile court or may terminate its dependency jurisdiction and retain jurisdiction over the child as a ward of the legal guardianship, as authorized by Section 366.4." (§ 366.3, subd. (a).)

[3]     "If, following the establishment of a legal guardianship, the county welfare department becomes aware of changed circumstances that indicate adoption or, for an

5

grandfather of L.F. and T.F. as guardians of the children.  Letters of guardianship were issued.

On February 16, 2012, the juvenile court made orders maintaining the legal guardianship with respect to each child and setting the matters for a post permanency planning hearing in February 2013.  On April 2, 2012, the court set hearings under section 366.26 for June 12, 2012.

On June 12, 2012, the court rescheduled the section 366.26 hearings for July 13, 2012.

 On July 13, 2012, contested section 366.26 hearings were held in the children's dependency cases.  The juvenile court terminated the parental rights of mother B.S., J.S. (father of N.S.), and N.F. (father of L.F. and T.F.).  The court continued the children as dependent children of the court and found a permanent plan of adoption was appropriate.

Mother filed a notice of appeal from the orders terminating her parental rights as to the children.

## II

### *Applicable Law*

"ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation. (25 U.S.C. § 1911(b)-(c); *Mississippi Band of Choctaw Indians v. Holyfield* (1989) 490 U.S. 30, 36, 109 S.Ct. 1597, 104 L.Ed.2d 29.)"  (*In re W.B., Jr.* (2012) 55 Cal.4th 30, 48, fn. omitted.)  "ICWA is quite precise in setting out the scope of its provisions.  It applies to any ' "child custody proceeding" ' involving an ' "Indian child." '  (25 U.S.C. § 1903.)

---

Indian child, tribal customary adoption, may be an appropriate plan for the child, the department shall so notify the court.  The court may vacate its previous order dismissing dependency jurisdiction over the child and order that a hearing be held pursuant to Section 366.26 to determine whether adoption or continued legal guardianship is the most appropriate plan for the child."  (§ 366.3, subd. (c).)

An 'Indian child' is an unmarried person under 18 who is either a member of an Indian tribe or is eligible for membership and is the biological child of a tribe member. (25 U.S.C. § 1903(4).) A ' "child custody proceeding" ' is any action resulting in a foster care placement, termination of parental rights, preadoptive placement, or adoptive placement. (25 U.S.C. § 1903(1).) A ' "foster care placement" ' refers to the temporary removal of a child from the parent or Indian custodian to a foster home or institution, or the home of a guardian or conservator, where parental rights have not been terminated but the parent or Indian custodian cannot have the child returned on demand. (25 U.S.C. § 1901(1) (i).)" (*Id*. at pp. 49-50.)

"When applicable, ICWA imposes three types of requirements: notice, procedural rules, and enforcement. (See *In re S.B*. (2005) 130 Cal.App.4th 1148, 1156-1157 . . . .) First, if the court knows or has reason to know that an ' "Indian child" ' is involved in a ' "child custody proceeding," ' as those terms are defined in the Act (25 U.S.C. § 1903(1), (4)), the social services agency must send notice to the child's parent, Indian custodian, and tribe by registered mail, with return receipt requested. (25 U.S.C. § 1912(a).) If the identity or location of the tribe cannot be determined, notice must be sent to the Bureau of Indian Affairs (BIA). (*Ibid*.) No hearing on foster care placement or termination of parental rights may be held until at least 10 days after the tribe or BIA has received notice. (*Ibid*.)" (*Id*. at p. 48.)

"Next, after notice has been given, the child's tribe has 'a right to intervene at any point in the proceeding.' (25 U.S.C. § 1911(c).) 'At the heart of the ICWA are its provisions concerning jurisdiction over Indian child custody proceedings. . . . [I]n the case of children not domiciled on the reservation: on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of "good cause," objection by either parent, or declination of jurisdiction by the tribal court.' (*Mississippi Band of Choctaw Indians v. Holyfield*, *supra*, 490 U.S. at p. 36, 109 S.Ct. 1597, fn. omitted.) If the tribal

court does not assume jurisdiction, ICWA imposes various procedural and substantive requirements on the state court proceedings.  Indigent parents or Indian custodians have the right to court-appointed counsel.  (25 U.S.C. § 1912(b).)  Before the court can place an Indian child in foster care or terminate parental rights, it must find 'that active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful.'  (25 U.S.C. § 1912(d).)  A foster care placement also requires a finding, by clear and convincing evidence, based on testimony from 'qualified expert witnesses,' that 'continued custody of the child by the parent . . . is likely to result in serious emotional or physical damage to the child.'  (25 U.S.C. § 1912(e).)  Before a termination of parental rights may occur, likelihood of harm must be proven beyond a reasonable doubt.  (25 U.S.C. § 1912(f).)"  (*Id*. at pp. 48-49.)

"Once the appropriate showing is made, ICWA establishes rules for the placement of an Indian child outside the home.  'The most important substantive requirement imposed on state courts is that of § 1915(a), which, absent "good cause" to the contrary, mandates that adoptive placements be made preferentially with (1) members of the child's extended family, (2) other members of the same tribe, or (3) other Indian families.'  (*Mississippi Band of Choctaw Indians v. Holyfield*, at pp. 36–37, 109 S.Ct. 1597.)"  (*Id*. at p. 49.)

"Finally, an enforcement provision offers recourse if an Indian child has been removed from parental custody in violation of ICWA.  Upon a petition from the parent or the child's tribe to 'any court of competent jurisdiction,' a foster care placement or termination of parental rights will be invalidated if the action was conducted in violation of ICWA.  (25 U.S.C. § 1914.)"  (*Ibid*.)

"In 2006, with the passage of Senate Bill No. 678 (2005–2006 Reg. Sess.), the Legislature incorporated ICWA's requirements into California statutory law.  (Stats.2006, ch. 838.)"  (*Id*. at p. 52.)  "ICWA's many procedural requirements for juvenile

8

dependency . . . cases are found in sections 224 through 224.6 of the Welfare and Institutions Code."  (*Ibid.*)

Under California law, if the court or a social worker "knows or has reason to know that an Indian child is involved" in an Indian child custody proceeding, notice must be sent, "by registered or certified mail with return receipt requested," "to *all* tribes of which the child may be a member or eligible for membership, until the court makes a determination as to which tribe is the child's tribe in accordance with subdivision (d) of Section 224.1, after which notice need only be sent to the tribe determined to be the Indian child's tribe."  (§ 224.2, subd. (a)(1) & (a)(3), italics added.)  This mandate "must be construed as requiring notice to *all* federally recognized tribes within the general umbrella identified by the child's parents or relatives."[4]  (*In re Alice M.* (2008) 161 Cal.App.4th 1189, 1202.)

The court and the county welfare department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . is to be, or has been, filed is or may be an Indian child in all dependency proceedings . . . if the child is at

---

[4]    California law imposes more demanding notice requirements than does ICWA. Under IWCA and the implementing federal regulations, notice to the child's tribe is only required where the identity and location of the child's tribe is known.  (25 U.S.C., § 1912, subd. (a); 25 C.F.R. § 23.11(a).)  Where the identity or the location of the child's tribe cannot be determined, notice of the pendency of any involuntary child custody proceeding involving an Indian child in a state court must be sent to the appropriate area director of the BIA. (25 U.S.C., § 1912, subd. (a); 25 C.F.R. § 23.11(b).)  Subdivision (d) of section 224 commands that "[i]n any case in which this code or other applicable state or federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child, or the Indian child's tribe, than the rights provided under the Indian Child Welfare Act, the court shall apply the higher standard."  ICWA contains a similar provision: "In any case where State or Federal law applicable to a child custody proceeding under State or Federal law provides a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under this subchapter, the State or Federal court shall apply the State or Federal standard." (25 U.S.C. § 1921.)

risk of entering foster care or is in foster care."  (§ 224.3, subd. (a).)  If the court or social worker "knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.2, contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility."  (§ 224.3, subd. (c).)  If the court or social worker "knows or has reason to know that an Indian child is involved, the social worker . . . shall provide notice in accordance with paragraph (5) of subdivision (a) of Section 224.2."  (§ 224.3, subd. (d).)

### III

### *Discussion*

A.  *Failure to Provide Notice to Cherokee Tribes*

Mother contends that, since she and another family member indicated that the maternal side of the family had Cherokee Indian ancestry, "it was incumbent upon the social worker to either provide ICWA notice to the three federally recognized Cherokee Indian tribes or to demonstrate that each of the possible links articulated by family members had been convincingly discredited."  She insists that the tribal information provided with regard to the maternal grandfather "may or may not be complete information, as appellant-mother's statement of tribal affiliation may have been with regard to her mother or her father's side of the family, or both."

Mother believes that the social worker made a decision to not send the ICWA notices to the Cherokee Indian tribes based upon the maternal grandfather's comments to the court, which were described in the social worker's ICWA report filed February 21,

10

2008. Mother speculates that the information provided by the maternal grandfather may have been unreliable, stating: "He may not have had an abiding interest in his Indian ancestry . . . . Indeed, the maternal grandfather may have had a faulty or selective memory in the matter." She argues that the "ICWA Attachment report did not properly foreclose the strong suggestion from [her] and the paternal grandmother that the three minors had or may have had Cherokee Indian tribe heritage." Nothing in the record discloses that mother had ever received information from her father suggesting Cherokee heritage.

As this court has recognized: "[T]here are many instances in which vague or ambiguous information is provided regarding Indian heritage or association (e.g., 'I think my grandfather has some Indian blood'; 'My great-grandmother was born on an Indian reservation in New Mexico'). In these types of cases, . . . inquiry is necessary before any attempt at notice to a specific tribe even can be made." (*In re Alice M.*, *supra*, 161 Cal.App.4th at p. 1200.) In this case, however, mother initially made an affirmative claim of Cherokee heritage, which would have required ICWA notices to all Cherokee tribes if new information had not dispelled that claim (cf. *id.* at pp. 1194, 1197-1201).

This court must assume, in the absence of any contrary evidence, the social worker complied with her affirmative and continuing duty of inquiry and diligently sought to ascertain whether the children were Indian children. (See Evid. Code, § 664 ["It is presumed that official duty has been regularly performed"]; see *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1429-1430 [presumption that Department of Children's Services carried out its duties of inquiry].) Although the *paternal* grandmother of L.F. and T.F. at first indicated to the court that there might be Cherokee heritage through the *maternal* grandmother and mother stated the children had Cherokee heritage, the ICWA notice reflects that the maternal grandmother has no known Indian heritage. The ICWA notice further indicates that the maternal grandfather had Indian ancestry but that heritage was not Cherokee. Under the circumstances, we must presume that additional information

11

obtained by the social worker from mother's parents upon further inquiry superseded the mother's and the paternal grandmother's original statements regarding maternal Cherokee heritage.

Mother cites *In re Damian C.* (2009) 178 Cal.App.4th 192 for the proposition that an initial suggestion of tribal affiliation, even if later disclaimed, still requires notice to those tribes. "[In *Damian C.*], the Agency had a reason to know Damian is an Indian child. [The mother] stated she may have Indian ancestry, Pasqua Yaqui, through the maternal grandfather . . . . [The maternal grandfather] reported he had heard his father . . . was Yaqui or Navajo, then heard the family had no Indian heritage, and he did not know to which Yaqui or Navajo tribe the family may have been related or where the tribe or band may be located. He said the family's attempts to research their possible Indian heritage had been unsuccessful and he has no contact information for his father [a maternal great-grandfather]. This information constituted a 'reason to know that an Indian child is or may be involved' and triggered the requirement to make further inquiry. The Agency additionally was required to provide notice to the federally recognized Navajo and Yaqui tribes because, even though [the maternal grandfather] reported the family had been unsuccessful in establishing the family's Indian heritage, the question of membership in the tribe rests with the tribe itself. [Citation.] [The maternal grandfather's] explanation he lacked sufficient information to determine whether the family in fact had Indian heritage did not release the Agency from the obligation to provide notice." (*Id.* at p. 199.)

*Damian C.* does not stand for the proposition advanced by mother. Rather, it supports the principle that where a family member has received mixed information from a now unavailable relative, some of it suggesting Indian heritage and other information indicating no Indian heritage, there remains a possibility of Indian Heritage and that

circumstance constitutes a "reason to know that an Indian child is involved" (§ 224.2, subd. (a)).[5]

In this case in contrast, there was no indication that some member of the family had provided mixed information regarding Indian heritage to mother and that person was presently deceased or otherwise unavailable. Here, the social worker impliedly contacted both maternal grandparents, who were mother's immediate lineal ancestors and who were closely involved with the children and acted as their guardians for a period. Accepting mother's position would only build error and unnecessary delay into lengthy dependency proceedings where ICWA information has evolved upon further inquiry and initial claims of tribal heritage have been revealed as fallacious.

It is a well settled principle of appellate review that a court's order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) " 'All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Ibid.*) A parent appealing from an order terminating parental rights "has the duty to present error affirmatively by an adequate record; error is never presumed. (*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532. . . , and cases cited therein.)" (*In re D.W.* (2011) 193 Cal.App.4th 413, 417-418 ["Because the record does not establish which, if any, of the three spellings of the grandmother's first name is correct, father has not shown affirmatively that the spelling used in the ICWA notice was erroneous"].)

---

[5] "The circumstances that may provide reason to know the child is an Indian child include" the circumstance that "a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1).)

Contrary to mother's assertion, the record does not demonstrate that the social worker should have sent the September 2007 ICWA notices to the Cherokee Indian tribes or she should have sent new ICWA notices to the Cherokee Indian tribes for the section 366.26 hearing held in July 2012 because, at those times, the social worker had no reason to know that the children may have Cherokee heritage.[6]

B. *Identifying Information Regarding Great-Grandparents*

Mother suggests that the September 2007 notices were inadequate because they did not contain any information about the children's great-grandparents. She argues: "Both sets of grandparents remained as fixtures throughout the case. It is simply impossible to fathom that during this time, the social worker was unable in her due diligence to ascertain any relevant information [regarding the great-grandparents] from the four very invested and engaged grandparents . . . ."

Section 224.2, subdivision (a)(5), requires ICWA notice to include certain information, including the following: "(A) The name, birthdate, and birthplace of the Indian child, if known. [¶] (B) The name of the Indian tribe in which the child is a member or may be eligible for membership, if known. [¶] (C) *All names known* of the Indian child's biological parents, grandparents, and *great-grandparents* . . . , including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, *if known*. . . ."

Part 23.11 of the federal regulations implementing ICWA provides that the notices must include, "*if known*," "[a]ll names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents

_____

[6]    Appellate jurisdiction to review an appealable order requires a timely appeal. (*In re Jonathon S.* (2005) 129 Cal.App.4th 334, 340.) A timely appeal from an order entered in a dependency matter may not challenge prior orders, for which the statutory time for filing an appeal has passed. (*Ibid*.)

and *great grandparents* or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information."  (25 CFR § 23.11(d)(3), italics added; see 25 C.F.R. § 23.11(a), (b), & (c).)

Mother has not pointed to anything in the record establishing that the maternal grandparents had any information regarding the biological great-grandparents that they were willing to share or had shared with the social worker but was omitted from the September 2007 notices due to the social worker's error or failure to diligently inquire. Consequently, the record on appeal does not demonstrate that those notices were inadequate.  Of course, the omission of information regarding the non-Indian great-grandparents would be harmless error in any case.  (See *In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576-577.)

Neither has mother established, by reference to the record, that the social worker subsequently received any information regarding the great-grandparents and, therefore, the social worker was required to send new ICWA notices for the section 366.26 hearing. (See § 224.3, subd. (f).)

Mother's arguments regarding the omission of information regarding the great-grandparents ignore the cardinal principles of appellate review and are rejected.

C. *Failure to Revisit Applicability of ICWA*

Mother maintains that the juvenile court's February 2008 finding that ICWA did not apply to the children's dependency proceedings was premature because ICWA does not apply if a court orders family maintenance.  She insists that the court had a sua sponte duty to order "a new and continuing inquiry into proper noticing under ICWA, particularly at the critical time of the proceedings that led to the termination of [her] parental rights."

In *In re Alexis H.* (2005) 132 Cal.App.4th 11, which mother cites in support of her contention, the father claimed descent from both the Cherokee Nation and Apache tribes.

(*Id*. at p. 13.) ICWA notices were sent to a number of Indian tribes. (*Ibid*.) Following a contested hearing, the juvenile court placed the children with the mother, declared the children dependents of the court, and ordered family maintenance services. (*Id*. at p. 14.) On appeal, the father asserted that the information in the notices was incomplete and inaccurate in a number of respects. (*Ibid*.) The appellate court concluded the defective notices constituted harmless error in light of ICWA's purposes, because the Department of Children and Family Services had not pursued foster care or adoption but rather recommended from the beginning that the children remain with their mother. (*Id*. at p. 16.) It expressed confidence that if the department took further action that might lead to foster care or adoption, future notices would contain complete and accurate information. (*Ibid*.)

*Alexis H*. did not hold, as mother appears to suggest, that ICWA notice provided in a dependency proceeding before foster care is being sought is premature or a nullity. Rather, it determined that the deficiencies in the notices were harmless error.

In fact, California law contemplates early ICWA inquiry and notice. The court and the county welfare department have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . *is to be*, or has been, filed is or may be an Indian child in all dependency proceedings . . . if the child is at *risk* of entering foster care or is in foster care." (§ 224.3, subd. (a), italics added.) If the court or social worker "knows or has reason to know that an Indian child is involved, the social worker . . . is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable . . . ." (§ 224.3, subd. (c).) In some cases, ICWA notices must be sent even before the hearing on an initial petition: "If the . . . social worker [who determines that the child shall be retained in custody and is responsible for filing the dependency petition] knows or has reason to know that an Indian child is involved, notice shall be given in accordance with Section 224.2." (§ 290.1, subd. (f).) A dependent child who is placed in a parent's custody may still be at *risk* of entering foster

care since the child may be subsequently removed from parental custody. (See §§ 387 [supplemental petition], 364, subd. (e) [subsequent proceedings]; see also Cal.Rules of Court, rule 5.706(f).)

In addition, the reviewing court in *Alexis H.* recognized the department's ongoing responsibility to provide ICWA notices in the future. Section 224.2, subdivision (b), provides in part: "Notice shall be sent whenever it is known or there is reason to know that an Indian child is involved, and *for every hearing thereafter*, including, but not limited to, the hearing at which a final adoption order is to be granted, *unless it is determined that the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.) does not apply* to the case in accordance with Section 224.3." (Italics added.)

Section 224.3, subdivision (e)(3), states: "If proper and adequate notice has been provided pursuant to Section 224.2, and neither a tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, the court may determine that the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.) does not apply to the proceedings, provided that the court shall reverse its determination of the inapplicability of the Indian Child Welfare Act and apply the act prospectively if a tribe or the Bureau of Indian Affairs subsequently confirms that the child is an Indian child."

"Notwithstanding a determination that the Indian Child Welfare Act does not apply to the proceedings made in accordance with subdivision (e) [of section 224.3], if the court [or] social worker . . . subsequently receives any information required under paragraph (5) of subdivision (a) of Section 224.2 that was not previously available or included in the notice issued under Section 224.2, the social worker . . . shall provide the additional information to any tribes entitled to notice . . . and the Bureau of Indian Affairs." (§ 224.3, subd. (f).)

In this case, the court determined that ICWA did not apply to the children's dependency proceedings. (See § 224.3, subd. (e)(3).) The record does not disclose that the ICWA notices leading to that judicial determination were legally deficient. Neither

17

does the record reveal that the court or the social worker subsequently received any additional information not previously included in those ICWA notices. (See § 224.3, subd. (f).) The juvenile court had no duty to order the social worker to conduct a further inquiry into the applicability of ICWA or to send ICWA notices for the section 366.26 hearing.

## DISPOSITION

The July 13, 2012 orders terminating parental rights are affirmed.


_____

ELIA, J.


WE CONCUR:



_____

RUSHING, P. J.



_____

PREMO, J.