Filed 2/10/15  In re Angel K. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ANGEL K., a Person Coming Under the Juvenile Court Law. | B254596 (Los Angeles County Super. Ct. No. CK78535) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAVID W., <br><br> Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Sherri Sobel, Juvenile Court Referee, and Robert S. Draper, Judge.  Affirmed and remanded with directions.

Donna Balderston Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Melinda A. Green, Deputy County Counsel, for Plaintiff and Respondent.

_____

Presumed father David W. sought to have minor Angel K. moved to the home of paternal aunt (Tracey W.) when Angel had lived with de facto parents since being released from the hospital as a newborn. At the 18-month review hearing on February 6, 2014, the dependency court[1] denied father's Welfare and Institutions Code section 388[2] petition, finding it would not be in Angel's best interests to be placed with Tracey. The court also declined to place Angel in father's custody on the grounds such a placement would create a substantial risk of detriment. It further found that the Los Angeles County Department of Children and Family Services (the Department) had not made reasonable efforts at reunification, and ordered six additional months of reunification services specifically tailored to father's needs.

Father appeals the court's February 6, 2014 findings and orders, contending a May 1, 2013 order preventing the Department from moving Angel from a foster home to Tracey's home violated father's right to due process, the court abused its discretion in denying father's section 388 petition, substantial evidence did not support the court's refusal to return the minor to father's custody, and the court failed to ensure proper notice under the federal Indian Child Welfare Act (ICWA). We affirm the court's findings and orders, and remand the matter for the court to ensure compliance with ICWA notice requirements.

## FACTUAL AND PROCEDURAL BACKGROUND

Angel was born five weeks premature in June 2012, and tested positive for cocaine at birth. After a week in the neonatal intensive care unit, she was detained by the

---

[1] Two judicial officers presided over the case. Judge Robert S. Draper presided over the proceedings prior to the hearing on February 6, 2014. The rulings on that date were made by Juvenile Court Referee Sherri Sobel.

[2] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

dependency court and released to foster parents, who have cared for her continuously since she was a week old.

Father underwent DNA testing and was declared a presumed father on December 12, 2012. The court found jurisdiction over Angel based on allegations against mother, but dismissed drug and alcohol abuse allegations against father. The court ordered that father should receive family reunification services in accordance with a case plan that included regular drug testing and parenting classes. It also ordered that the Department make efforts to assist father with housing. The court granted father visitation and gave the Department discretion to liberalize visitation.

Father complied with the case plan, testing negative for drugs and attending all required classes. He consistently visited Angel since September 2012, but according to foster parents, he would only hold her for a short period of time and would return her to foster parents for consoling or comforting. As Angel grew older and began walking, foster parents reported father did not interact with her as much. On two separate occasions, father wandered away during a visit with Angel to get food from a homeless outreach program serving food at the park, and he once spent forty minutes of a visit trying to give away shoes he had brought for Angel that were too small. A Department report expressed concern about father's "mental capability to fully care for [the] child" and explains he does not "demonstrate the congitive [*sic*] or emotional capacity to meet the child's immediate needs for care and supervision." Father lives in a bachelor style apartment with a shared bathroom. Because his apartment was inappropriate for a young child, he expressed a desire to have Angel placed with Tracey.

In March 2013, Tracey told the social worker she would like to have Angel placed with her. She began attending father's visits with Angel in April 2013, but had not scheduled any additional visits by the time of the Department's June 2013 report. A September 2013 declaration by foster father stated that Tracy had never asked about Angel's schedule, needs, likes or dislikes, and had never asked to visit Angel's Head Start school or attend Angel's medical appointments or therapy sessions. When attending father's visits early on, she would hand Angel back to foster parents to be changed or fed.

3

On April 30, 2013, the foster parents filed a request for de facto parent status. In their request, they explained that the Department social worker had informed them that Angel would be moved to Tracey's home in about a month, but they were concerned about potential trauma Angel might suffer from the move, the lack of any prior relationship between Angel and Tracey, and the prospect that a move might interfere with mother's visitation and possible reunification.

On May 1, 2013, Angel's counsel walked on a request for a do not remove order preventing Angel's removal from foster parents' home until further court order.[3] Father's counsel was present, and informed Judge Draper that he had not had an opportunity to consult with father. The court granted the requested do not remove order, and instructed father's counsel "if you consult with your client and find that they are violently adverse to this result, you have permission to walk it on." Five days later, father filed a motion for reconsideration, pointing out that father was still receiving reunification services, and changing Angel's placement from foster parents to Tracey (which the do not remove order prevented) was consistent with the relative placement preference identified in section 361.3. Father's motion requested the opportunity to argue the matter in a formal hearing.

On June 4, 2013, father filed an opposition to the foster parents' request for de facto parent status, arguing that granting de facto status to foster parents would make reunification services pretextual, because foster parents would seek a continued relationship with Angel. Father's opposition pointed out that while foster parents were supportive of reunification, they opposed relative placement even though Tracey's home had been approved by the Department and she was ready and willing to have minor

---

[3] Father's counsel on appeal called our attention to the fact that the May 1, 2013 walk-on request—as well as a number of other documents—are missing from the record on appeal. On April 29, 2014, the presiding justice of this division ordered Judge Draper to either certify a copy or to describe the contents of the walk-on request for inclusion in the record on appeal. This court did not receive any response to its order. We therefore rely solely on the Reporter's Transcript of the May 1, 2013 hearing.

placed with her.  Father again pointed out that the do not remove order prevented the Department from changing Angel's placement from foster parents to Tracey.

At a June 12, 2013 hearing originally scheduled as a six-month review hearing under section 366.21, subdivision (e), the court continued the review hearing and appointed an expert under Evidence Code section 730 to evaluate father's ability to care for Angel, and if father had cognitive issues, to identify services or resources that could assist him in successfully reunifying with his child.  Over father's objections, the court granted de facto status to foster parents, but also gave the Department discretion to permit unmonitored and overnight visits with Tracey and to liberalize father's visitation, including permitting Tracey to act as a monitor.

When Angel began weekly overnight visits with Tracey in early July 2013, de facto parents provided baby supplies to Tracey at her request for about three weeks.  De facto parents continued cooperating with visitation plans for two months, but on September 9, 2013, they filed a section 388 petition seeking to stop overnight visits with Tracey and end reunification services for father.  They argued that the overnight visits had traumatized 16-month-old Angel, who returned from such visits lethargic and resentful.  They further argued despite having 16 months to demonstrate the capacity to care for his daughter, father had not progressed beyond monitored visits and there was no evidence he had demonstrated any parenting abilities.

At a scheduled review hearing[4] on September 13, 2013, the court received the Evidence Code section 730 report.  Expressing concern about lifting the do not remove order and subjecting Angel to multiple moves, the court ordered the Department to report on its investigation of Tracey as a possible relative placement, and set a briefing schedule for the parties to brief the issue of relative placement.  The court set a December 12, 2013 date to conduct a 12-month review hearing and hear de facto parents' section 388 petition.

---

[4] Although not clear from the record, the September 13, 2013 hearing is presumably the six-month review hearing continued from June 2013.

5

At a brief hearing on October 23, 2013, the court received evidence of father's possible Indian heritage and ordered the Department to investigate the information provided by father's counsel. In a November 21, 2013 report addressing the de facto parent's section 388 petition, the Department recommended terminating reunification services for father, noting he cannot adequately care for a toddler, including taking her to routine medical and developmental appointments. In a separate report addressing Angel's placement, the Department included a quote from the expert's report, describing father's challenges: "His cognitive functions in other areas are consistent with Asperger's Disorder which is a developmental disability. This will make it difficult for him to deal with all the complexities of child rearing." The Department recommended an adoptive home study on Tracey, but also stated, "At this time, it is in the best interest of [Angel] to remain placed with the current caregivers [de facto parents] while a home study on [Tracey] is being completed."

On December 12, 2013, the court denied the section 388 petition filed by de facto parents, ordered overnight visits with Tracey to continue, and ordered the Department to conduct an adoptive home study of Tracey's home. It ordered the Department to observe how Angel transitions between her de facto parents and Tracey, and indicated it wanted both the social worker and the Evidence Code section 730 expert available to testify about father's difficulties and needed services. It continued the review hearing to February 6, 2014.

On January 2, 2014, father filed a section 388 petition seeking to have Angel placed with Tracey. On February 6, 2014, the Department filed a response to father's section 388 petition, recommending against changing Angel's placement. The Department's report included reports by the court-appointed special advocate (CASA) and Angel's occupational therapist expressing concern about negative changes in Angel's demeanor during and after visits with Tracey.

Juvenile Court Referee Sheri Sobel presided over the review hearing on February 6, 2014, which she treated as an 18-month review hearing. After hearing testimony from the social worker, the Evidence Code section 730 expert, father, mother, and Tracey, the

6

court denied father's section 388 petition, found a substantial risk of detriment barring return to father, and ordered that Angel would remain placed with de facto parents. Father filed a Notice of Appeal, appealing from the court's findings and orders from September 13, 2013, October 23, 2013, December 12, 2013 and February 6, 2014, specifically identifying the court's denial of his section 388 motion for relative placement and the court's detriment finding.

## DISCUSSION

Father contends the dependency court erred in the following ways: (1) it violated his right to due process by entering a do not remove order preventing the Department from changing Angel's placement from a foster home to Tracey's home; (2) it abused its discretion by denying father's section 388 petition requesting to place Angel with Tracey; (3) it erroneously found a substantial risk of detriment prevented returning Angel to father's custody; and (4) it did not ensure ICWA notice requirements were met. We reject each of father's contentions on appeal, except his last contention regarding ICWA notice.

## Do Not Remove Order

Father contends the court's May 1, 2013 do not remove order violated the constitutional principle of separation of powers as well as his right to due process. Father first argues that the court's order unfairly prevented the Department's from transitioning Angel's placement from de facto parents to Tracey. He also argues that the order violated his right to due process because he did not receive a full evidentiary hearing on the question of placement until nine months after the do not remove order.

Father's February 10, 2014 Notice of Appeal does not identify the court's May 1, 2013 order as one of the orders being appealed from, and even if it did, the appeal would be untimely. (Cal. Rules of Court, rule 8.406(a); *In re Meranda P.* (1997) 56

Cal.App.4th 1143, 1151-1152 [appellate court may not inquire into the merits of a prior appealable order in a later appeal].) We therefore decline to consider father's arguments against the court's do not remove order.

**Father's Welfare and Institutions Code Section 388 Petition**

Father contends the court erred when it denied his section 388 petition seeking a change in the court's placement order to have Angel placed with Tracey. We review the denial of father's section 388 petition for abuse of discretion. (*In re Stephanie M.* (1994) 7 Cal.4th, 295, 318 [the lower court's decision on a section 388 petition is "committed to the sound discretion of the juvenile court, and [its] ruling should not be disturbed on appeal unless an abuse of discretion is clearly established"].) To the extent the denial of father's section 388 petition might be viewed as a denial of relative placement under section 361.3, we still apply the same standard of review. (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067 ["We are persuaded that the abuse of discretion standard should be applied to the review on appeal of the juvenile court's determination regarding relative placement pursuant to section 361.3"].) Reversal is appropriate only if we find the court has made an arbitrary, capricious or "patently absurd" determination. (*In re Stephanie M., supra*, 7 Cal.4th at p. 318.) We do not inquire whether substantial evidence would have supported a different order, nor do we reweigh the evidence and substitute our judgment for that of the lower court. (*Ibid.*) We ask only whether the court abused its discretion with respect to the order it actually made. (*In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1351.)

A petitioner under section 388 seeking modification of an earlier court order must present new evidence or a change of circumstances and demonstrate modification of the previous order is in the child's best interest. (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.) When a child is removed from parental custody under section 361 and a relative seeks placement under section 361.3, the court is to give "[p]referential consideration" to the request, meaning "that the relative seeking placement shall be the first placement to

8

be considered and investigated." (§ 361.3, subd. (c)(1).)  In determining whether relative placement is appropriate, the dependency court and the Department are to consider, among other factors, the best interests of the child; the parent's wishes; the placement of siblings and half siblings in the same home, if such placement is found to be in the best interest of each sibling; the nature and duration of the relationship between the child and the relative; and the relative's ability to provide a safe, secure, and stable environment for the child.  (§ 361.3, subd. (a)(1) through (7).)

Preferential consideration under section 361.3 is not a guarantee of placement.  (*In re Joseph T., Jr.* (2008) 163 Cal.App.4th 787, 798 ["[t]he relative placement preference . . . is not a relative placement *guarantee*"].)  Section 361.3 also does not create an evidentiary presumption that must be overcome before a child may be placed with a nonrelative over a statutorily qualified preferred relative.  (*In re Stephanie M., supra,* 7 Cal.4th at p. 321.) The only requirement imposed by section 361.3 is that the court consider as a first priority whether placement with the relative "is appropriate, taking into account the suitability of the relative's home and the best interest of the child."  (*Ibid.,* italics omitted.)  The relatives entitled to preferential consideration for placement include "an adult who is a grandparent, aunt, uncle, or sibling."  (§ 361.3, subd. (c)(2).)  The preferential consideration continues at least throughout the reunification period, even when the child is initially placed with a nonrelative.[5]  (*In re Joseph T., Jr., supra*, at p. 795.)

Father contends the court should have granted his section 388 petition because Tracey's home had been approved by the Department and because the court found the child would not suffer detriment from a change in placement.  The Department responds that the court did not abuse its discretion in refusing to change Angel's placement.

---

[5] The Department cites to the language in subdivision (d) of section 361.3 to argue the relative placement preference does not apply during reunification because it only applies when "a new placement of the child must be made."  However, Division One rejected the same argument in *In re Joseph T., Jr., supra*, at pages 794-798, and the Department offers no explanation as to why we should not follow the reasoning of that case.

The court's denial of father's section 388 petition was not an abuse of discretion because there was ample evidence that such a change in placement would not be in Angel's best interests, a key consideration in deciding whether to change a child's placement. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) The evidence supports the court's decision to keep Angel placed with her foster parents. Angel's initial placement occurred before father's paternity had been established, and Tracey did not come forward as a potential placement until Angel had spent the first nine months of her life with de facto parents. [6] At the time the court made its ruling, Angel had lived with the same foster family her entire life, over 18 months, and had a close connection with de facto parents. Foster parents had provided Angel with consistent care and developmentally appropriate services and activities, including swimming lessons and occupational therapy. The court acknowledged that Angel has a secure attachment with de facto parents and therefore would be able to bond to another family. However, the record reveals substantial ambivalence on the part of both father and Tracey about assuming parental obligations. Father was in compliance with his case plan, but over the course of

---

[6] We observe that the parties involved in this case, from the caseworker to father's attorney to the court, failed to appreciate the urgency of decisively handling the question of relative placement promptly once Tracey came forward. According to the evidence before the court, Tracey was unaware of Angel's situation until March 2013 and promptly came forward to seek placement. Angel has lived with de facto parents since she was seven days old. The court recognized father's status as a presumed father when Angel was six months old, and if relative placement was in the child's best interests, the parties should have promptly explored that option at the earliest practical time. Responding to a walk-on request by minor's counsel, the court issued a do not remove order in early May 2013. Rather than appealing the court's do not remove order, father's counsel stood idly by as the court continued the matter time and again. Father's counsel did not file a 388 petition until January 2014, and was unable to show what circumstances had changed that would support a court finding that it would be in Angel's best interests to be placed with Tracey. The court is also partly responsible for the delay. Rather than deciding the question of Angel's placement shortly after issuing the do not remove order, it held hearings on June 12, 2013, September 13, 2013, October 23, 2013, December 12, 2013, and February 6, 2014, postponing the decision for various reasons for almost an entire year of the young child's life.

10

12 months, his visitation with Angel did not increase significantly and remained monitored.  The CASA reported Angel as having a flat affect during a visit with Tracey, and the occupational therapist also noted changes in Angel's behavior and demeanor after visits with Tracey.  Father argued that a change in placement would give him the opportunity to improve his parenting skills, but there was conflicting evidence regarding father's ability to parent a young child.  The court recognized that father needed services more narrowly tailored to his specific circumstances and that without those services, his prospects for reunification were questionable.  The court did not close the door on the possibility of a change in placement, instead stating it was not prepared to do so at this time.

Because the court has wide discretion with respect to the child's placement, and the evidence supported its conclusion that it would not be in Angel's best interest to change her placement from foster parents to Tracey, we conclude the court did not abuse its discretion in denying father's section 388 petition.


## Review Hearing and Dependency Court's Detriment Finding

Father contends that the court's decision to continue Angel's placement with foster parents, rather than granting father custody, is not supported by substantial evidence.  We review the court's detriment findings at the 18-month review hearing for substantial evidence.  (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1345.)  Under subdivision (a) of section 366.22, the court must return a dependent child to parental custody unless the court finds by preponderance of the evidence that return would create a substantial risk of detriment to the child's well-being.

Father never argued before the dependency court that he would be able to receive Angel into his home without a risk of detriment.  Rather, he acknowledges he is unable to provide for the child's needs without assistance, and that because of his developmental challenges, he would need up to 12 months of guidance and training.  These facts provide adequate support for the court's detriment finding and its decision not to return Angel to

father.  Although father tries to argue that there is no risk of detriment because he could care for Angel with Tracey's assistance in Tracey's home, that argument improperly conflates the question of relative placement under section 361.3 with a detriment finding under section 366.22 subdivision (a).  On the record before us, the court's decision to continue Angel's placement with foster parents, rather than return her to father's custody under section 366.22 subdivision (a), is supported by substantial evidence.

**ICWA Notice**

Father contends the Department failed to comply with ICWA's notice requirements and so the matter must be remanded for compliance with those requirements.  The Department has provided us with postjudgment evidence, but it does not establish that the Department has fully complied with the notice requirements under ICWA.  Remand is necessary for the court to confirm adequate notice to the tribes.

"ICWA provides 'where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings, and of their right of intervention.'  (25 U.S.C. § 1912(a).)"  (*In re Damian C.* (2009) 178 Cal.App.4th 192, 196.)  To satisfy the notice provisions of ICWA and provide a proper record of such notice, the Department must first "identify any possible tribal affiliations and send proper notice to those entities[.]"  (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 739, fn. 4.)  "The notice must include the names of the child's ancestors and other identifying information, if known, and be sent registered mail, return receipt requested."  (*In re Brooke C.* (2005) 127 Cal.App.4th 377, 384.)  Copies of the notices sent, the returned receipts, as well as any correspondence received from the tribes, must be filed with the court.  (Cal. Rules of Court, rule 5.482(b); *In re Marinna J.*, *supra*, at p. 739, fn. 4.)

On October 16, 2013, father walked on a request for ICWA findings, filing with

the court documents father claimed indicated that paternal great grandmother was "Indian (American Chactaw)." The court ordered the Department to investigate whether father had Indian heritage, based on the information provided. On August 7, 2014, the court ordered the Department to provide notice of the dependency proceedings to the Choctaw tribe in Louisiana.

The evidence in the record does not demonstrate compliance with ICWA's notice requirements. There are three federally-recognized Choctaw tribes: the Jena Band of Choctaw Indians, the Mississippi Band of Choctaw Indians, and the Choctaw Nation of Oklahoma. (78 Fed.Reg. 26384 (May 6, 2013).) The Department has filed last minute information reports stating notices have been mailed to each tribe as well as the Chitimacha Tribe of Louisiana, but copies of the notices and returned receipts have not been filed. On September 10, 2014, the Department filed letters from the Mississippi Band of Choctaw Indians stating that father was neither enrolled in the tribe nor eligible for enrollment. However, there is no evidence demonstrating ICWA-compliant notification to the remaining two Choctaw tribes or the Chitimacha Tribe.

We therefore remand the matter to ensure compliance with ICWA's notice requirements, but do not reverse any of the orders already made by the court, because there has not yet been a sufficient showing that Angel would be considered an Indian child entitled to specific protections under ICWA. If a tribe later determines that Angel is an Indian child, "the tribe, a parent or [the child] may petition the court to invalidate an action of placement in foster care or termination of parental rights 'upon a showing that such action violated any provision of sections [1911, 1912, and 1913].' (25 U.S.C. § 1914.)" (*In re Damian C.*, *supra*, 178 Cal.App.4th at p. 200.)

**DISPOSITION**

The court's February 6, 2014 findings and orders are affirmed, and the cause is remanded for the purpose of ensuring compliance with ICWA's notice requirements.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

GOODMAN, J.*

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.