178 Cal.App.4th 192 (2009)
In re DAMIAN C., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent,
v.
D.C., Defendant and Appellant.
No. D054918.
Court of Appeals of California, Fourth District, Division One.
September 17, 2009.
*194 Sahyeh Samantha Fattahi for Defendant and Appellant.
John J. Sansone, County Counsel, John E. Philips, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.
Valerie N. Lankford, under appointment by the Court of Appeal, for Minor.

OPINION
McCONNELL, P. J.
D.C. appeals jurisdictional and dispositional orders concerning her son, Damian C. She contends the court erred by finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) did not apply in this case and by not requiring the San Diego County Health and Human Services Agency (the Agency) to make adequate inquiry and provide notice to the relevant Indian tribes. We affirm the jurisdictional and dispositional orders, but remand the case for the limited purpose of compliance with ICWA inquiry and notice requirements.

*195 FACTUAL AND PROCEDURAL BACKGROUND
On February 2, 2009, the Agency petitioned on behalf of one-year-old Damian on the basis of D.C.'s drug abuse. The court ordered Damian detained.
The social worker inquired of the alleged father, Jason H., and the maternal grandparents whether there was American Indian heritage in Damian's family by asking them the following questions:
"[1.] Has anyone in the family ever lived on a reservation?
"[2.] Has anyone in the family ever received any financial, medical or educational assistance from a tribe?
"[3.] Does anyone in the family speak the Native American Indian language?
"[4.] Is anyone active in tribal activities such as tribal council meetings, religious rituals or pow-wows?
"[5.] Is any family member a member of a tribe or an enrolled member in a tribe?"
Jason and the maternal grandparents answered "no" to each question. The social worker completed and attached Judicial Council form ICWA-010(A) to her report. She said she had questioned Jason and the maternal grandparents and she reported Damian had no known Indian ancestry.
D.C. submitted a "Parental Notification of Indian Status" Judicial Council form ICWA-020, stating she may have Indian ancestry as follows: "Pasqua Yaquienrollment is currently closed" and "M[aternal] G[rand] F[ather] Felipe Manuel C[.] is descended from tribe."
The social worker reported the Agency's ICWA noticing specialist subsequently interviewed the maternal grandfather, Manuel C., and asked the same questions the social worker had asked earlier.[1] Manuel C. answered "no" to each question. He stated he had heard his father, Felipe C., was either Yaqui or Navajo Indian, but later was informed the family did not have Indian heritage. He said he did not know to which Yaqui or Navajo tribe or band the family may be related or where the tribe or band may be located. He *196 understood the family had been trying to research its possible Indian heritage, but they kept hitting dead ends because they did not have enough information. He further stated Felipe C. lives in Temecula, California, but he is not in contact with Felipe C. and does not know his address or telephone number.
At the jurisdictional/dispositional hearing, the court found the allegations of the petition to be true, removed Damian from D.C. and ordered him placed in foster care. The court asked the social worker whether she had spoken directly with Manuel C. about the family's possible Indian heritage, and the social worker responded she had done so. The court found based upon the information before it, ICWA did not apply.

DISCUSSION
D.C. contends the court erred by finding ICWA did not apply and by not ensuring the Agency complied with ICWA requirements of inquiry and notice. She argues this court must vacate the orders and remand the case to comply with ICWA inquiry and notice requirements.
(1) Congress enacted ICWA in 1978 "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families ...." (25 U.S.C. § 1902.) "The ICWA presumes it is in the best interests of the child to retain tribal ties and cultural heritage and in the interest of the tribe to preserve its future generations, a most important resource." (In re Desiree F. (2000) 83 Cal.App.4th 460, 469 [99 Cal.Rptr.2d 688].) Section 1911 of ICWA provides that a tribe may intervene in state court dependency proceedings. (25 U.S.C. § 1911(c).) Notice to the tribe provides it the opportunity to exercise its right to intervene. (In re Junious M. (1983) 144 Cal.App.3d 786, 790-791 [193 Cal.Rptr. 40].)
ICWA provides "where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings, and of their right of intervention." (25 U.S.C. § 1912(a).)
Effective January 1, 2007, the California Legislature codified ICWA notice requirements in a comprehensive reorganization of statutes related to the application of ICWA. (Sen. Bill No. 678 (2005-2006 Reg. Sess.) § 31.) This reorganization added numerous sections to the Welfare and Institutions Code,[2] and amended or repealed certain other sections.
*197 The Agency argues the legislative history of Senate Bill No. 678 (2005-2006 Reg. Sess.) reveals a purpose to change the law to conform to less stringent federal notice standards. We disagree. Our reading of the statutory language and the history of this legislation does not find this was the purpose. Instead, the legislative history reveals an intention to standardize the interpretation of ICWA provisions and ICWA inquiry and noticing practice throughout the state and to broaden the statutory interpretation. We do not find a purpose to raise the threshold of when ICWA notice is required.[3]
The Senate Judiciary Committee analysis states: "[A]lthough ICWA was enacted more than 25 years ago, state courts and county agencies in California continue to violate not only the spirit and intent of ICWA, but also its express provisions." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 678 (2005-2006 Reg. Sess.) as amended Aug. 22, 2005, p. 6.) The Senate Judiciary Committee reported the goal of the legislation was to ensure compliance with ICWA requirements in order to foster Indian children's connection with their tribal heritage. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 678, supra, at p. 6.) The preamble to Senate Bill No. 678 states the bill would "revise, recast, and expand various provisions of state law...." (Legis. Counsel's Dig., Sen. Bill No. 678 (2005-2006 Reg. Sess.) Stats. 2006, ch. 838.) It notes the bill would require "social workers to provide additional notices in cases involving Indian children," and "... impose additional duties on social workers ...." (Ibid.)
(2) The Senate third reading analysis of the bill states: "While this bill essentially codifies current federal requirements, it does broaden the interpretation of current laws. Primarily, court costs will include additional noticing requirements for tribes and tribal representatives ...." (Sen. 3d reading Analysis of Sen. Bill No. 678 (2005-2006 Reg. Sess.) as amended Aug. 21, 2006, p. 3.) The Senate Rules Committee reported the bill "revises and recasts" provisions of state law "by codifying into state law various provisions of [ICWA], the Bureau of Indian Affairs Guidelines for [s]tate [c]ourts, and state [r]ules of [c]ourt" and "affirms the state's interest in protecting Indian children and the child's interest in having tribal membership and a connection to the tribal community." (Sen. Rules Com., Off. of Sen. Floor Analyses, Unfinished Business Analysis of Sen. Bill No. 678 (2005-2006 Reg. Sess.) as amended Aug. 21, 2006, p. 2.) Section 224, subdivision (d) expressly provides if a state or federal law provides a higher standard than more lenient ICWA requirements, the higher standard shall prevail. (§ 224, *198 subd. (d); see In re J.T. (2007) 154 Cal.App.4th 986, 993 [65 Cal.Rptr.3d 320]; In re Alice M. (2008) 161 Cal.App.4th 1189, 1199 [74 Cal.Rptr.3d 863].)
Neither the text of the legislation nor the legislative history indicates an intention to undermine California courts' past interpretations of ICWA notice requirements. (In re Alice M., supra, 161 Cal.App.4th at p. 1199.) "Section 224 reiterates the state's commitment `to protecting the essential tribal relations and best interest of an Indian child ... by placing the child, whenever possible, in a placement that reflects the unique values of the child's tribal culture and is best able to assist the child in establishing, developing, and maintaining a political, cultural, and social relationship with the child's tribe and tribal community.' [Citation.]" (In re Alice M., supra, 161 Cal.App.4th at p. 1199.)
Section 224.2, subdivision (b) restates the ICWA requirement that "[n]otice shall be sent whenever it is known or there is reason to know that an Indian child is involved, and for every hearing thereafter ... unless it is determined that [ICWA] does not apply to the case...." (§ 224.2, subd. (b); see 25 U.S.C. § 1912(a).) This is the same requirement of notice upon which California courts relied when deciding cases before the enactment of Senate Bill No. 678 (2005-2006 Reg. Sess.). (In re Alice M., supra, 161 Cal.App.4th at p. 1198.)
Section 224.3, subdivision (a) imposes an "affirmative and continuing duty" on the court and the Agency "to inquire whether a child for whom a petition ... is to be, or has been, filed is or may be an Indian child in all dependency proceedings ...." Section 224.3, subdivision (b)(1) states the circumstances that may provide reason to know the child is an Indian child include, but are not limited to, the following: "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1), italics added; see also Cal. Rules of Court,[4] rule 5.481(a)(5)(A).)
(3) Former rule 5.664 required ICWA notice of dependency proceedings if the child may be an Indian child.[5] This rule was repealed effective January *199 1, 2008. Current rule 5.481(b)(1) now requires notice only if it is known or there is reason to know the child is an Indian child.[6] However, circumstances that may provide reason to know the child is an Indian child include "[t]he child or a person having an interest in the child ... informs or otherwise provides information suggesting that the child is an Indian child ...." (Rule 5.481(a)(5)(A), (b)(3), italics added.) We see little practical difference in the change to the rule. Although the "may" language was eliminated from the notice provision in the rule and now conforms to the statute, both section 224.3, subdivision (b)(1) and rule 5.481(a)(5)(A) indicate circumstances that may provide reason to know the child is an Indian child include information suggesting the child is an Indian child.[7]
(4) Here, the Agency had a reason to know Damian is an Indian child. D.C. stated she may have Indian ancestry, Pasqua Yaqui, through the maternal grandfather, Manuel C. Manuel C. reported he had heard his father, Felipe C., was Yaqui or Navajo, then heard the family had no Indian heritage, and he did not know to which Yaqui or Navajo tribe the family may have been related or where the tribe or band may be located. He said the family's attempts to research their possible Indian heritage had been unsuccessful and he has no contact information for his father. This information constituted a "reason to know that an Indian child is or may be involved" and triggered the requirement to make further inquiry. The Agency additionally was required to provide notice to the federally recognized Navajo and Yaqui tribes because, even though Manuel C. reported the family had been unsuccessful in establishing the family's Indian heritage, the question of membership in the tribe rests with the tribe itself. (In re Desiree F., supra, 83 Cal.App.4th at p. 471.) Manuel C.'s explanation he lacked sufficient information to determine whether the family in fact had Indian heritage did not release the Agency from the obligation to provide notice.
Although we conclude the matter must be remanded with directions to the court to ensure ICWA compliance, we decline to reverse the jurisdictional and dispositional orders. There is not yet a sufficient showing Damian is an Indian child within the meaning of ICWA. (Cf. In re Rebecca R. (2006) 143 Cal.App.4th 1426, 1431 [49 Cal.Rptr.3d 951].) If after proper inquiry and *200 notice a tribe determines Damian is an Indian child, the tribe, a parent or Damian may petition the court to invalidate an action of placement in foster care or termination of parental rights "upon a showing that such action violated any provision of sections [1911, 1912, and 1913]." (25 U.S.C. § 1914.)

DISPOSITION
The jurisdictional and dispositional orders are affirmed. The matter is remanded to the juvenile court with directions to vacate its finding that ICWA does not apply and to instruct the Agency to complete ICWA inquiry and notice. The court shall advise the parents that if Damian is determined to be an Indian child within the meaning of ICWA, they have the right to petition the court to invalidate any action in violation of 25 United States Code sections 1911, 1912 and 1913. (25 U.S.C. § 1914.)
McDonald, J., and Aaron, J., concurred.
NOTES
[1] The ICWA noticing specialist substituted for the fourth question, "Are you or anyone active in tribal activities? (i.e. religious ceremonies or political activities.)"
[2] Statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] In an order dated August 25, 2009, we granted D.C.'s unopposed request that this court take judicial notice of documents from the legislative history of Senate Bill No. 678 (2005-2006 Reg. Sess.). In an order dated August 27, 2009, we granted the Agency's request to take judicial notice of a report by the Family and Juvenile Law Advisory Committee of the Judicial Council regarding former Senate Bill No. 678 (2005-2006 Reg. Sess.) that proposed repealing California Rules of Court, former rule 5.664 to conform with section 224.2.
[4] Rule references are to the California Rules of Court.
[5] Former rule 5.664 provided notice of dependency proceedings must be sent to "all tribes of which the child may be a member or may be eligible for membership" and "[n]otice must be sent whenever there is reason to believe the child may be an Indian child. ..." (Former rule 5.664(f)(3), (5) repealed eff. Jan. 1, 2008, italics added.)
[6] Rule 5.481(b)(1) requires "[i]f it is known or there is reason to know that an Indian child is involved in a [dependency] proceeding ... the court must send Notice of Child Custody Proceeding for Indian Child (form ICWA-030) to ... the Indian child's tribe, in the manner specified in ... section 224.2 ...." (Rule 5.481(b)(1).)
[7] The current rule governing inquiry retains the "may" language. Rule 5.481(a)(4)(C) provides if the Agency "knows or has reason to know that an Indian child is or may be involved, [it] must make further inquiry as soon as practicable by," among other things, "[c]ontacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (Rule 5.481(a)(4)(C), italics added.)