Filed 10/16/20  In re D.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.M. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D077403 |
| Plaintiff and Respondent, | (Super. Ct. Nos. J519508B-C) |
| v. | |
| G.R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Affirmed in part, vacated in part, and remanded with directions.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

G.R. (Mother) appeals the order terminating her parental rights in the juvenile dependency case of her minor children, D.M. and Y.M. On appeal, Mother's sole contention is that the trial court erred by not complying with the inquiry and notice provisions of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). In a letter brief, the San Diego County Health and Human Services Agency (the Agency) concedes that because the record was insufficient to support the trial court's conclusion that an adequate inquiry occurred, a remand is necessary "for the Agency to provide further documentation of its initial ICWA inquiry efforts and, if applicable, its further inquiry efforts."

We agree and conclude the trial court erred by finding the Agency satisfied its statutory duty to conduct a proper and adequate inquiry to determine whether ICWA applies. We therefore vacate the court's ICWA findings and remand with directions to the Agency to continue its inquiry and provide sufficient information to the trial court regarding that inquiry to permit the court to determine whether ICWA's noticing requirements apply here. In all other respects, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

"In accord with the usual rules on appeal, we state the facts in the manner most favorable to the dependency court's order." (*In re Janee W.* (2006) 140 Cal.App.4th 1444, 1448, fn. 1.) We provide only an abbreviated summary of the dependency proceedings given the narrow focus on the ICWA issue raised on appeal.

In June 2019, the Agency petitioned the trial court under Welfare and Institutions Code[1] section 300, subdivision (b), on behalf of one-year-old D.M. and 18-day-old Y.M. Mother and J.D. (Father) had a long history of chronic homelessness, substance abuse, and untreated mental illness. Parents had left the children with a family friend, who was also unable to safely care for the children. Parents have a total of 13 children, none of whom are in their care and several have been adopted.

In its detention report, the Agency noted that ICWA may apply. Mother reported to the Agency that her paternal grandfather was Native American and "she has Native American heritage of the Mexican Yaqui, Cherokee, and Paiute tribes." However, she denied being registered with any tribe or ever receiving benefits from any tribes. The Agency also noted that in a previous dependency case involving one of Mother's other children in 2017, the court found that ICWA did not apply.

At the detention hearing, the court found the Agency had made a prima facie showing under section 300 and ordered that the children be detained in out-of-home care. At the hearing, Father also claimed to have Indian heritage. The court ordered the Agency to investigate whether ICWA applied.

Father subsequently informed the Agency that he may have Indian ancestry through the Cherokee, Paiute, and Blackfeet tribes. He told the Agency that his great-grandmother was an enrolled member of a tribe and lived on a reservation, but the record does not disclose whether the Agency learned any more about this great-grandmother. In the jurisdiction report,

---

[1] Further statutory references are to the Welfare and Institutions Code unless otherwise stated.

3

the Agency again noted that ICWA may apply but claimed Mother now denied Indian heritage. The jurisdiction report did not detail any inquiry conducted by the Agency. Later, Mother again claimed Indian ancestry and identified the Yaqui tribe.

On the date originally scheduled for the jurisdiction hearing, the court noted it was "deferring" on the ICWA issue but directed "noticing be done for the Yaqui tribe." The minute order noted that the jurisdictional hearing was continued and "ICWA noticing is to occur."

In an addendum report filed on August 12, 2019, the Agency set forth its limited attempt to contact relatives and several tribes to determine the children's Indian status. The report noted the Agency mailed notices to the tribes on August 5, only one week before it submitted the report. By the time it submitted the report, the Agency had not received any responses. At a hearing on August 21, 2019, without receiving any new information regarding the Agency's inquiry, the court found that the Agency complied with the order for noticing and, based on the information received by the Agency, "there is no reason to know at this point . . . that the children are Indian children, [and] that ICWA does not apply in this case."

After additional proceedings that did not involve ICWA issues, the court ultimately terminated parental rights and found the children to be adoptable. The court also found as to both children that "[n]otice pursuant to [ICWA] is not required because the court has reason to know the child is not an Indian child. Reasonable inquiry has been made to determine whether the child is or may be an Indian child."

Mother appealed.

4

DISCUSSION

In Mother's opening brief, she challenges only the trial court's findings regarding compliance with ICWA and the related state statutes. She contends that the Agency "did not provide the juvenile court with sufficient information to make its finding that the ICWA did not apply in this case." In response, the Agency agrees, conceding that "a limited remand is appropriate in this case for the Agency to provide further documentation of its initial ICWA inquiry efforts and, if applicable, its further inquiry efforts."

We agree. Based on the record before us, we conclude that the court's finding that the Agency conducted a reasonable inquiry under ICWA is not supported by substantial evidence. (See *In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) Remand is necessary to ensure compliance with the requirements of ICWA.

"Congress enacted ICWA in 1978 in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.' " (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) ICWA established minimum standards that courts are required to follow in involuntary proceedings to place a child in foster care or to terminate parental rights to ensure Indian tribes receive notice "where the court knows or has reason to know that an Indian child is involved." (25 U.S.C. § 1912(a); *Isaiah W.*, at p. 8.)

ICWA defines an "Indian child" as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an

5

Indian tribe[.]" (25 U.S.C. § 1903(4); see Welf. & Inst. Code, § 224.1, subd. (a).) The trial court and the Agency have an affirmative and continuing duty in every dependency proceeding to determine whether ICWA applies. (Welf. & Inst. Code, § 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a); *Isaiah W.*, *supra*, 1 Cal.5th at pp. 10-11.) In cases "where the court knows or *has reason to know* that an Indian child is involved," ICWA requires the Agency, or other party seeking adoption or foster care placement, to notify "the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." (25 U.S.C. § 1912, italics added; *Isaiah W.*, at p. 5.)

This court's decision in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*) discussed recent changes to the federal regulations concerning ICWA compliance and subsequent conforming amendments to California's statutory scheme regarding ICWA, which became effective January 1, 2019. In *D.S.*, we explained that the resulting clarification of law, found in part in newly amended section 224.2, "creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child'], *id.*, subd. (d) [defining circumstances

6

that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].).'" (*D.S.*, at p. 1052.)

At the first step, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049.)

Here, the Agency concedes that the record does not firmly establish that this initial inquiry occurred. Although the record discloses the Agency inquired with the parents about their heritage, the record does *not* disclose the details of any inquiry involving their extended family members or others having an interest in the children. At most, the record suggests Father may have made his mother available and the Agency spoke to the maternal grandmother, but the record is silent on whether the Agency asked any questions related to determining whether the children have Native American heritage or any relevant information obtained from those interviews. Finally, although the Agency mailed notices to certain tribes, it asked the court to determine ICWA did not apply before allowing a sufficient time for the tribes to respond. While it is possible the Agency obtained enough information from its inquiry to determine whether the children were Indian children, it did not include that information in its reports to the trial court. Without additional information regarding the initial inquiry, the trial court could not fulfill its duty to determine whether the Agency made an adequate inquiry and, by

7

extension, whether the children met the definition of "Indian child" falling under the requirements of ICWA.

Although both parties accept that the record does not adequately demonstrate the reasonableness of the Agency's initial inquiry, the parties appear to disagree in respect to whether there was a "reason to believe" the children were Indian children sufficient to trigger the duty to conduct a "further inquiry" under ICWA and section 224.2.[2]  However, the Agency acknowledges that if the initial inquiry leads to a reason to believe, a further inquiry must occur here.  A remand to the trial court will allow the Agency to either conduct the necessary inquiry or satisfy the trial court that it already completed this inquiry.

As both Mother and the Agency appear to agree, the trial court skipped straight to requiring "notice" to Indian tribes.  The parties, however, disagree about the impact of the court's order to provide notice.  Mother contends that the order to provide notice implies that the trial court found that there was a "reason to know" the children were Indian children.  The Agency, however, contends that the evidence was insufficient to support any finding that there was a reason to know.

---

[2]     In *D.S.*, the Agency conceded that there was a reason to believe the child was an Indian child based on an aunt's statements regarding possible tribal affiliation, triggering a duty to conduct a further inquiry.  (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052.)  The aunt's statements in *D.S.* were similar to the parents' statements here, but without additional information regarding the Agency's inquiry we decline to determine whether a "reason to believe" exists here.  As the Agency notes, the children's older sibling was found to not be an Indian child in a prior proceeding, but the record does not disclose the details of the inquiry in that proceeding.  The Agency may have possessed additional information, not disclosed in the record on appeal, to support a finding that there was no reason to believe the children were Indian children.

We agree with the Agency. Given the absence of evidence in the record as to the inquiry conducted by the Agency, it was impossible for the trial court to make a reasoned determination of the Indian status of these children. It is not clear whether the trial court made its findings based on the prior version of the California ICWA statutes, but the record suggests that any finding that notice was required was premature.

Moreover, the initial inquiry is critical to ensuring proper noticing based on having a reason to know the children are Indian children. "The notice must include enough information for the tribe to 'conduct a meaningful review of its records to determine the child's eligibility for membership' (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576), including the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703; § 224.3, subd. (a)(5)(C))." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) This information must be gleaned from the Agency's inquiry. Skipping the initial inquiry and sending a minimal notice to certain tribes is not sufficient to satisfy the Agency's and trial court's duties when an inquiry could reveal additional information that would allow the tribes to conduct a more meaningful review. Rather than assuming a reason to know exists, we believe a limited remand to allow for the required inquiry will assist in achieving a better outcome.

We also disagree with Mother that a reversal of the trial court's ICWA findings necessitates a reversal of the order terminating her parental rights. Because the trial court's finding that the Agency's inquiry was adequate is not supported by substantial evidence, we vacate the court's finding that ICWA does not apply and remand to allow the Agency to conduct the necessary inquiry, if it has not already occurred, and demonstrate to the trial

9

court the adequacy of that inquiry.  We decline to reverse the order terminating Mother's parental rights because there is not yet a sufficient showing that the children are Indian children or that formal ICWA notice was required.  (See *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467.)  If the children are later determined to be Indian children, an interested party may petition the court to invalidate any orders shown to have violated ICWA. (25 U.S.C. § 1914; *In re Damian C.* (2009) 178 Cal.App.4th 192, 199-200.)

By reversing *only* the trial court's ICWA findings, we remand to ensure the court and the Agency fulfill their duties under ICWA.  If the Agency can establish that it conducted the necessary inquiry and there is no reason to believe the children are Indian children, the trial court may then find that ICWA does not apply.  Alternatively, if the inquiry establishes a reason to believe the children are Indian children, the Agency must make further inquiry to determine whether there is a reason to know the children are Indian children, which would then trigger the formal notice requirements of section 224.3.  (*D.S., supra*, 46 Cal.App.5th at p. 1052.)

## DISPOSITION

The trial court's orders finding that ICWA does not apply and that the Agency's ICWA inquiry was adequate are vacated. In all other respects, the challenged orders are affirmed. The matter is remanded to the trial court with directions to determine the applicability of ICWA based on the Agency's required inquiry and for further proceedings consistent with this opinion.

HALLER, J.

WE CONCUR:


BENKE, Acting P. J.


DATO, J.

11