Filed 12/17/20  In re Christian N. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re CHRISTIAN N., a Person Coming Under the Juvenile Court Law. | B302947 (Los Angeles County Super. Ct. No. 17CCJP00438) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> WHITNEY Y., <br><br> Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge.  Conditionally affirmed and remanded.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, Brian Mahler, Deputy County Counsel, for Plaintiff and Respondent.

Whitney Y. (mother) appeals from the juvenile court's order granting a Welfare and Institutions Code section 388[1] petition filed by counsel for her child, Christian N., to change mother's visitation from unmonitored to monitored visits. Mother does not dispute the merits of section 388 petition, but contends that the Los Angeles County Department of Family and Children Services (DCFS) failed to comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). We conditionally affirm the order granting the section 388 petition, but remand for compliance with the inquiry provisions of ICWA.

### FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, DCFS filed a section 300 petition on behalf of Christian N. (born Sept. 2015), alleging that mother and father, Randolph N., seriously injured the child or placed him at serious risk of suffering serious bodily injury based on their failure to obtain timely medical treatment. The petition also alleged mother's history of substance abuse placed the child at risk of serious injury. An Indian Child Inquiry Attachment form (ICWA-010) attached to the petition stated that Christian may have Indian ancestry.

In a detention report, DCFS reported that mother had "disclosed Native American Indian ancestry as it pertains to Blackfoot and Cherokee [tribes]." The report also described an August 2017 interview with mother at her reported residence. Present at the interview was

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

maternal cousin, Stephanie W. During the interview, mother disclosed possible affiliation through her maternal side with the Blackfoot and Cherokee tribes, though she denied being registered with either tribe. Mother also stated that Stephanie W. and maternal aunt, Britney C., assisted her with providing care for Christian. Mother provided phone numbers for Britney C., Stephanie W., and maternal cousin Bryan J. DCFS interviewed Stephanie W., Britney C., and paternal grandmother, Aretha N., regarding Christian's referral. DCFS also interviewed a social worker who was handling mother's prior dependency case.[2] In that interview, the social worker reported that adoption services for Christian's sister, Paradise, had been placed on hold as "mother is no[w] claiming ICWA."

At the detention hearing in September 2017, mother submitted a Parental Notification of Indian Status form (ICWA-020), and indicated she may have Indian ancestry with the Cherokee tribe through her mother, Tremayne Y., whose whereabouts were unknown. During the hearing, mother told the juvenile court that Tremayne was homeless.[3] Mother also told the court that her maternal great great-grandmother, who was now deceased, had lived on an Indian reservation. After finding mother's claim of Indian ancestry "trigger[ed] a necessity for an

---

[2]     Mother's parental rights to her daughter, Paradise, were terminated following a dependency proceeding commencing around 2012.

[3]     In the jurisdiction/disposition report, mother reported that she occasionally saw Tremayne and her father, John C. Both were listed as homeless.

investigation," the court directed DCFS "to contact appropriate Indian agencies for determination." The court also found that father, who did not claim to have Indian ancestry, was Christian's presumed father. The court detained Christian and granted both parents monitored visitation.

In October 2017, DCFS filed a jurisdiction/disposition report indicating that it had interviewed various witnesses, including Britney C. and Aretha N. about mother's conduct. The court continued the jurisdiction/disposition hearing on January 23, 2018, and ordered DCFS to "initiate ICWA and provide [a] report" for the continued hearing. A month later, Christian was placed in the care of Britney C. In March 2018, Christian was placed in a non-relative foster home after mother got into a physical altercation with Britney C.[4]

Both parents appeared at the jurisdiction/disposition hearing on May 2, 2018, and entered no-contest pleas, after which the court sustained the section 300 petition as amended.[5] The court then declared Christian a dependent of the court, and ordered parents reunification services. In an October 2018 status review report, DCFS

---

[4] Christian was later moved to Aretha N.'s home in November 2018.

[5] DCFS subsequently filed an amended section 300 petition to add an allegation of neglect based on father's criminal history. The amended petition included an ICWA-010 form that stated that an Indian child inquiry had been made, and that the child did not have any known Indian ancestry.

4

reported that ICWA did not apply.[6] At the six-month review hearing on December 19, 2018, the court continued jurisdiction over the child, and continued family reunification services for the parents.

At an appearance progress hearing on October 3, 2019, the court continued reunification services, and modified mother's visitation from monitored to unmonitored, with mother to notify DCFS where the visits would occur. Approximately one month later, Christian's counsel filed a section 388 petition requesting a return to monitored visitation. The petition was filed after mother and Britney C. were arrested for grand theft and resisting arrest. Following argument by counsel at the section 388 hearing on December 3, 2019, the court granted the petition.

Mother filed a timely notice of appeal challenging the court's order granting the section 388 petition.

## DISCUSSION

"ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family." (*In re T.G.* (2020) __ Cal.App.5th __, __ [2020 WL 7222728, at *5] (*T.G.*), citing 25 U.S.C. § 1902; *In re Isaiah W.* (2016) 1 Cal.5th 1, 7–8 (*Isaiah W.*); *In re W.B.* (2012) 55 Cal.4th 30, 47.) "[P]ersistent noncompliance with ICWA led [our] Legislature in 2006 to 'incorporate[] ICWA's

---

[6] The record on appeal does not include a minute order or statement in the reporter's transcript reflecting a finding by the juvenile court that ICWA does not apply.

5

requirements into California statutory law.' [Citations.]" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 91.) Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); accord, § 224.1, subds. (a) & (b).)

We review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. (*In re A.M.* (2020) 47 Cal.App.5th 303, 314 (*A.M.*); see also *In re J.L.* (2017) 10 Cal.App.5th 913, 917–918 [independent appellate review applies whenever material facts are undisputed].) ICWA violations are subject to harmless error review. (*In re K.R.* (2018) 20 Cal.App.5th 701, 708 (*K.R.*); *In re E.R.* (2016) 244 Cal.App.4th 866, 878.)

We apply the law as it existed when the order from which this appeal arose. (*A.M.*, *supra*, 47 Cal.App.5th at pp. 320–321.)[7] At the time of the December 2019 section 388 hearing, the juvenile court and DCFS had "an affirmative and continuing duty to inquire" whether Christian, for whom a section 300 petition had been filed, "is or may be an Indian child." (Former § 224.2, subd. (a); see *Isaiah W.*, *supra*, 1 Cal.5th at p. 6 [based on the continuing duty of inquiry, a parent may

---

[7] Because our review is based on the juvenile court's implicit ICWA findings in December 2019, we do not consider the January 1, 2020 amendment to California Rules of Court, rule 5.481(a)(4) (see *T.G.*, *supra*, __ Cal.App.5th [2020 WL 7222728, at p. *8) or the recent amendments to section 224.2 (see Stats. 2020, ch. 104, § 15; Stats. 2019, ch. 434, § 2).

challenge ICWA finding from a subsequent order even if the parent did not raise such a challenge from the initial order].)

Because Christian was placed into temporary custody of DCFS pursuant to section 306,[8] DCFS also had a "duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (Former § 224.2, subd. (b).) Extended family members include any adult who is the child's grandparent, aunt or uncle, brother or sister, niece or nephew, or first or second cousin. (25 U.S.C. § 1903(2); Cal. Rules of Court, rule 5.481(a)(4)(A).)

A duty of further inquiry also arises whenever the court or social worker "has reason to believe that an Indian child is involved in a proceeding." (Former § 224.2, subd. (e).) "Further inquiry includes, but is not limited to, all of the following: [¶] (1) Interviewing the parents . . . and extended family members to gather [relevant] information . . . . [¶] (2) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and

---

[8] Section 306 provides that a social worker in a county welfare department may "[t]ake into and maintain temporary custody of, without a warrant, a child who has been declared a dependent child of the juvenile court under Section 300." (§ 306, subd. (a)(2).)

7

any other person that may reasonably be expected to have information regarding the child's membership status or eligibility. [¶] (3) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership." (Former § 224.2, subd. (e); accord, former Cal. Rules of Court, Rule 5.481(a)(4) [DCFS "must make further inquiry as soon as practicable" by contacting Indian tribes or any person reasonably expected to have information if it "knows or has reason to know that an Indian child is or may be involved"].)

Mother contends that DCFS has failed to comply with its duties of inquiry. We agree. As reflected in DCFS's detention report and the ICWA forms, mother indicated that she had actual or possible Indian heritage through her maternal side. Despite communicating with or having contact information for two maternal cousins, a maternal aunt, and a paternal grandmother, DCFS never reported that it had attempted to ask these relatives about mother's possible Indian heritage. DCFS also failed to establish whether it inquired of its own social workers handling mother's other dependency case, which was on hold based on mother's claim of Indian ancestry. In other words, DCFS's reports do not establish that it adhered to the court's previous order directing it to conduct an investigation into Christian's possible Indian ancestry.

Thus, because DCFS could have establish whether Christian's was an Indian child by contacting the Blackfoot and Cherokee tribes, and by interviewing Christian's extended family members, we cannot say that DCFS's failure to meaningfully interview those family members was

8

harmless. (See *K.R.*, *supra*, at p. 709 ["[t]he agency cannot omit from its reports any discussion of its efforts to locate and interview family members who might have pertinent information and then claim that the sufficiency of its efforts cannot be challenged on appeal because the record is silent"].)

This court generally follows the rule that where, as here, there is a failure to comply with ICWA procedures before termination of parental rights, all jurisdictional and dispositional orders remain in effect while there is a limited remand to the juvenile court for DCFS to adhere to its duties of inquiry. (See *In re Hunter W.* (2011) 200 Cal.App.4th 1454, 1467; *In re Damian C.* (2009) 178 Cal.App.4th 192, 199–200.) Accordingly, we remand for compliance with ICWA's inquiry requirements, and if applicable, notice requirements.

## DISPOSITION

The order granting the section 388 petition is conditionally affirmed. The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:



MANELLA, P. J.          COLLINS, J.


9