Filed 8/23/22  In re R.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re R.M., et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080259 |
| Petitioner and Respondent, | |
| v. | (Super. Ct. No. J520333A/B) |
| R.W., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed in part; reversed in part and remanded.

Donna B. Kaiser, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia Silva, Acting County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and J. Jeffrey Bitticks, Deputy County Counsel, for Plaintiff and Respondent.

# I.

## INTRODUCTION

R.W. (Mother) appeals a juvenile court's order arising from a Welfare and Institutions Code section 361.3[1] placement hearing in which the court denied placement of Mother's minor children, R.M. and Z.M., with maternal grandmother. The sole issue on appeal is whether the San Diego County Health and Human Services Agency (Agency) failed to conduct adequate initial and further inquiries into the children's potential Native American ancestry, as required by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.).

The Agency concedes that its initial inquiry under ICWA was deficient, and does not contest or otherwise respond to Mother's challenge to its further inquiry. We agree with Mother and conclude that the ICWA initial and further inquiries were deficient. Therefore, we reverse the court's ICWA finding, remand for the limited purpose of ICWA compliance, and otherwise affirm the placement order. Because the parties filed a joint stipulation seeking the issuance of an immediate remittitur, the remittitur shall issue immediately.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In March 2020, the Agency petitioned the juvenile court under section 300, subdivision (b)(1), on behalf of five-year-old R.M. and three-year-old Z.M.

---

[1]    Further statutory references are to the Welfare and Institutions Code unless noted.

[2]    Because Mother's only contention on appeal concerns ICWA, we limit our factual background accordingly. The children's father, Ro.M. (Father), is not a party to this appeal, and we discuss him as needed.

In both petitions, the Agency alleged that Mother negligently and willfully failed and refused to provide the children with adequate food. In the petition regarding R.M., the Agency alleged that R.M. was admitted to the hospital below the first percentile for weight, and that his severe malnutrition and vitamin deficiencies led to rickets and inability to walk normally. In the petition regarding Z.M., the Agency alleged that due to malnutrition, Z.M. was admitted to the hospital severely underweight, in critical condition because of respiratory failure, unable to walk or stand on his own, and with numerous broken ribs, brain atrophy, bone demineralization, muscle wasting, and a profound developmental delay, among other conditions.

According to the petitions, the social worker asked Mother about any Native American ancestry, and Mother responded that her father (maternal grandfather) might have Cherokee heritage but she was unsure. Likewise, the Agency's detention report indicated Mother's belief that maternal grandfather might have Cherokee ancestry. The report also indicated, however, that both parents had denied Native American ancestry.

At the April 1, 2020 detention hearing, Mother again indicated that she might have Cherokee ancestry, and Father indicated for the first time that he also had Cherokee ancestry. The court deferred making a finding under ICWA.

The next month, Agency staff (including the children's social worker) facilitated a Child and Family Team meeting. Many of the children's family members attended, including Mother, maternal grandmother, paternal grandmother and grandfather, maternal aunt V., maternal great-aunt G., paternal great-aunt S., and maternal great-uncles L. and D. The record on appeal does not indicate whether maternal grandmother, maternal aunt V., maternal great-aunt G., paternal great-aunt S., and maternal great-uncles L.

3

and D. were ever asked about the children's Native American ancestry—at this meeting or at any other time during the dependency proceedings.

In June 2020, both maternal grandfather and another maternal aunt (R.) sent letters to the juvenile court, asking it to reunite Mother with the children. The record does not reflect whether maternal grandfather or maternal aunt R. were ever asked about the children's Native American ancestry.

The juvenile court held the contested adjudication and jurisdiction hearing on October 2, 2020. According to the corresponding minute order, the court received stipulated testimony from the social worker that Mother denied Native American ancestry, that Father had not made himself available to the Agency for an inquiry regarding his claim of Cherokee ancestry, and that paternal grandparents denied Native American ancestry. The court then found without prejudice that a reasonable inquiry was made and that ICWA did not apply.

At the March 5, 2021 contested disposition hearing, the court again found without prejudice that ICWA did not apply. The record on appeal does not reflect any other findings or testimony related to ICWA at this hearing or subsequent hearings.

Some relatives appeared at dependency hearings before the court's March 5, 2021 ICWA ruling. For example, maternal aunt V. and great aunt G. appeared at a February 2, 2021 hearing and at the March 5, 2021 disposition hearing. Other maternal relatives appeared at later dependency hearings, as well. Maternal grandmother appeared at hearings in September, October, November, and December 2021. Again, the record does not reflect that any of these relatives were ever asked about the children's Native American ancestry.

4

At a special hearing on April 1, 2022, the juvenile court denied Mother's request to place the children with maternal grandmother. Mother timely appealed from that order.[3]

## III.

## DISCUSSION

Mother argues that the juvenile court erred by finding ICWA inapplicable before the Agency had completed its initial and further inquiries. She raises no other appellate issue concerning the placement order she is appealing. The Agency concedes that its ICWA inquiry was deficient and needs to be completed. Accordingly, we reverse the court's ICWA finding, remand for the limited purpose of ICWA compliance, and otherwise affirm the placement order.

A. *ICWA Inquiry Duties, Generally*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency

---

[3] Mother did not appeal from the juvenile court's prior jurisdictional and dispositional orders in which the court made its ICWA rulings. Ordinarily, "California follows a 'one shot' rule under which, if an order is appealable, appeal must be taken or the right to appellate review is forfeited." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 761, fn. 8.) Because the duty of inquiry under ICWA is a *continuing* one, however, the one shot rule does not apply here. (See § 224.2, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 6 (*Isaiah W.*) ["Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, we hold that the parent may challenge a finding of ICWA's inapplicability in an appeal from the subsequent [termination of parental rights] order, even if she did not raise such a challenge in an appeal from the initial [jurisdictional and dispositional] order."].)

have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, at p. 9.)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*).)

A juvenile court finding that ICWA is inapplicable generally implies that the Agency has fulfilled its inquiry duty. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 (*Austin J.*) [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.)

B. *Initial Inquiry*

The first stage of initial inquiry " 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at p. 1049.) ICWA defines " 'extended family

member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [extended family member "defined as provided in [§] 1903" of ICWA].)

Here, Mother contends that the Agency failed to ask maternal great-aunt G., maternal aunts R. and V., maternal grandmother, and maternal great-uncles D. and L. if they had Native American ancestry. Mother also alleges that the court failed to ask several of these relatives about Native American ancestry, despite their presence at multiple court hearings.

We agree that the initial inquiry is incomplete as to maternal aunts R. and V. and maternal grandmother. Maternal aunt V. and maternal grandmother appeared at multiple hearings and at a family team meeting, which indicates their availability to the court and the Agency. As to maternal aunt R., her June 2020 letter to the court suggests that the Agency could have requested her contact information and contacted her. Yet, there is no indication that any of these maternal relatives were ever asked about Native American ancestry.

We also note that there is no indication maternal grandfather was ever asked about Native American ancestry, despite Mother identifying him as the source of her potential Cherokee ancestry. Moreover, the record indicates that maternal grandfather was available—he wrote a letter to the court requesting that Mother be reunited with the children, and his wife (maternal grandmother) requested the children's placement in their home.

Because grandparents and aunts are " 'extended family members' " within the meaning of ICWA, the Agency was required to ask maternal aunts

and maternal grandparents about Native American ancestry, and the juvenile court had to ensure this inquiry took place before it could make a final determination that ICWA did not apply. (25 U.S.C. § 1903(2); § 224.1, subd. (c); *D.S.*, *supra*, 46 Cal.App.5th at p. 1049; see *In re Josiah T.* (2021) 71 Cal.App.5th 388, 403-404 (*Josiah T.*) [agency's "initial inquiry was inadequate," where "[d]espite having four paternal family members . . . potentially available to consult about American Indian ancestry," agency did not ask paternal grandmother until 18 months after the petition or other paternal relatives until later].) We do not agree, however, that the Agency was required to make an ICWA inquiry of maternal great-aunt G. and maternal great-uncles L. and D. Great-aunts and great-uncles are not " 'extended family members' " under ICWA. (See 25 U.S.C. § 1903(2).)

We therefore conclude that the Agency and court failed to satisfy their initial inquiry obligations under section 224.2, subdivisions (b) and (c).

C. *Further Inquiry*

Mother also argues that the Agency's duty of further inquiry was triggered but not satisfied. We agree.

As amended in 2020, section 224.2 specifies that "[t]here is *reason to believe* a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information *suggesting* that either the parent of the child or the child is a member *or may be* eligible for membership in an Indian tribe." (*Id*. at subd. (e)(1), italics added.) Courts have broadly construed the "reason to believe" standard and concluded that such a broad application is essential to the remedial purpose of the affirmative and ongoing duty to inquire under California law. (*In re S.R.* (2021) 64 Cal.App.5th 303, 317 (*S.R.*) [new subdivision (e) "forecloses [a] narrow

8

interpretation of what constitutes reason to believe"]; *In re T.G.* (2020) 58 Cal.App.5th 275, 295 (*T.G.*).)

Mother's repeated statement that she might have Cherokee ancestry through her father provided a reason to believe that the children might have Native American ancestry. Broadly construing the statute as amended, this constituted "[i]nformation suggesting" that the children "may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1); see, e.g., *In re Rylei S.* (2022) 81 Cal.App.5th 309, 314, 319 (*Rylei S.*) [mother's statement on ICWA-020 form that she " 'may have' " Cherokee heritage on maternal grandfather's side triggered duty of further inquiry]; *T.G., supra*, 58 Cal.App.5th at pp. 294–297 [broadly interpreting "reason to believe" to conclude that mother's claim of Native American ancestry on her maternal side triggered duty of further inquiry]; *In re D.F.* (2020) 55 Cal.App.5th 558, 563, 569–570 [Agency satisfied duty of further inquiry where mother stated she " 'may have Indian ancestry' " from unknown tribe in New Mexico and maternal grandfather reported his "family 'believed they were of [N]ative American descent,' " " 'but that it was never proven' "]; see also *In re I.F.* (2022) 77 Cal.App.5th 152, 163 [noting that synonyms for the word " ' "suggest" ' " as used in § 224.2, subd. (a)(1) " 'include "imply," "hint," "intimate," and "insinuate" ' "]; but see *Austin J., supra*, 47 Cal.App.5th at p. 888 [concluding mother's statement that she " 'may have Indian ancestry' " did not call for further inquiry because mere possibility of Native American ancestry was not a reason to believe].[4])

_____

[4]     Several courts of appeal have explicitly rejected *Austin J.*'s narrow interpretation of the kind of information sufficient to trigger the duty of further inquiry. (*In re M.E.* (2022) 79 Cal.App.5th 73, 83; *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 (*Y.W.*); *S.R., supra*, 64 Cal.App.5th at pp. 316–317; *T.G., supra*, 58 Cal.App.5th at pp. 280–281.)

Mother's later denial of Cherokee ancestry does not negate the duty of further inquiry, particularly where the record does not indicate any basis for her changed response. (See, e.g., *Josiah T.*, *supra*, 71 Cal.App.5th at pp. 404–405 [further inquiry required when paternal grandmother disclosed and later denied Cherokee ancestry: "a mere change in reporting, without more, is not an automatic ICWA free pass; when there is a conflict in the evidence and no supporting information, [the Agency] may not rely on the denial alone without making some effort to clarify the relative's claim"]; see also *In re Breanna S.* (2017) 8 Cal.App.5th 636, 650 [" 'parents may be unsure or unknowledgeable of their own status as a member of a tribe' "]; *Y.W.*, *supra*, 70 Cal.App.5th at p. 554 ["That [mother] disclaimed any Indian ancestry at the outset of the dependency proceedings did not end the Department's duty of inquiry, especially where relevant contact and identifying information was readily available."].) Thus, the Agency had a duty of further inquiry under ICWA.

The duty of further inquiry includes, "but is not limited to," interviewing extended family members to gather the biographical information required by section 224.3, subdivision (a)(5), to be included in ICWA notices; contacting the Bureau of Indian Affairs (BIA); and contacting "the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility." (§ 224.2, subd. (e)(2)(A)–(C).) Yet, as discussed *ante*, there is no indication that any maternal relatives, much less maternal grandfather, were interviewed about Native American ancestry. Nor is there any indication

10

that the Agency ever contacted the BIA or tribe. Thus, the Agency failed to satisfy its further inquiry obligations under ICWA.[5]

D. *Proper Disposition*

The parties disagree over the proper remedy. Mother argues that the ICWA inquiry errors were prejudicial and require conditional reversal. Meanwhile, the Agency implicitly concedes prejudice and contends that a limited remand and conditional affirmance are required. We conclude that a limited remand is necessary.

We recognize that there is a split of authority in the California courts of appeal as to the proper standard for prejudicial error under ICWA. (See, e.g., *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777–779 [describing three rules for "assessing whether a defective initial inquiry is harmless" (" 'automatic

---

[5] As Mother concedes, the Agency satisfied its inquiry obligations as to Father's claim of Cherokee ancestry. In contrast to Mother—who identified a specific family member as the potential source of her Cherokee ancestry and for whom there were numerous available maternal relatives who could have provided further information on her ancestry claim—Father did not identify a single relative from whom he inherited Cherokee ancestry or a single relative who might have more information, and he refused to attend a follow-up interview. Moreover, the Agency inquired of paternal grandparents, who reported that there was no Native American ancestry on their side. Thus, Father's vague statement, without any further specific information, did not create a "reason to believe," and the Agency satisfied its initial inquiry obligation by interviewing paternal grandparents. (See, e.g., *In re A.M.* (2020) 47 Cal.App.5th 303, 323 [holding there is "no need for further inquiry if no one has offered information that would give the court or [Agency] reason to believe that a child might be an Indian child" including in "circumstances where parents 'fail[] to provide any information requiring followup' . . . or refuse to talk to [the Agency]"]; *In re Levi U.* (2000) 78 Cal.App.4th 191, 199 [ICWA does not obligate the court "to cast about" for investigative leads]; c.f. *T.G., supra,* 58 Cal.App.5th at pp. 294–297 [finding reason to believe where parent's claim of ancestry included at least *some* information pointing to specific relatives who might have Native American ancestry]; *Rylei S., supra,* 81 Cal.App.5th at pp. 314, 319 [same].)

11

reversal,' " " 'readily obtainable information,' " and " 'presumptive affirmance' ") and proposing a fourth (" 'reason to believe' ")].) Here, we need not and do not take a position on this issue. The Agency's initial and further inquiries were clearly inadequate, and it has implicitly conceded prejudice. The Agency failed to interview any maternal relatives about potential Native American ancestry. Despite Mother's claim of potential Cherokee ancestry through her father, the Agency failed to interview him, contact the BIA, or contact the tribe. These efforts were a fundamental departure from the " 'affirmative and continuing duty to inquire' " under ICWA and a miscarriage of justice under any standard. (*Isaiah W.*, *supra*, 1 Cal.5th at p. 9; Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."].)

On this record, therefore, we must reverse the juvenile court's ICWA finding and remand for compliance with ICWA. Because Mother does not contest the placement order on any other grounds, we otherwise affirm the order. (See *In re Damian C.* (2009) 178 Cal.App.4th 192, 199–200; *In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1389.) We see no reason to disturb the placement order itself (even conditionally) because the dependency proceedings are ongoing, the Agency and the juvenile court will have an opportunity to satisfy their ICWA inquiry duties before any final order terminating parental rights, and even if information comes to light that the children are Indian children, it would not necessarily result in a reversal of the placement order. (See generally *In re S.H.* (Aug. 12, 2022, A163623) __ Cal.App.5th __ [2022 Cal.App.Lexis 694] [finding ICWA initial

12

inquiry error but declining to order conditional affirmance or conditional reversal of dispositional order].)

## DISPOSITION

The juvenile court's ICWA finding is reversed, and the placement order is otherwise affirmed. The matter is remanded to the juvenile court with directions to vacate its finding that ICWA does not apply and to instruct the Agency to complete its initial and further inquiries under ICWA. If the Agency or the juvenile court has reason to know that the children are Indian children, the juvenile court shall proceed appropriately. The remittitur shall issue immediately.


BUCHANAN, J.

WE CONCUR:



HALLER, Acting P.J.



O'ROURKE, J.


13